UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
LAUREN RIDENHOUR,

                        Plaintiff,

       -against-


BETTINA SULSER BRYANT and DONALD
L. BRYANT, JR.                           Case No.:  19 CV 2587

                    Defendants.
--------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Kraus & Zuchlewski LLP
60 East 42nd Street, Suite 2534
New York, New York  10165
212-869-4646 Tel.
Pearl Zuchlewski
pz@kzlaw.net
George B. Schwab
gs@kzlaw.net
Counsel to Plaintiff Lauren Ridenhour

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................................. ii

I.      PRELIMINARY STATEMENT ......................................................................................... 1

II.     PROCEDURAL BACKGROUND...................................................................................... 1

III.    ALLEGATIONS OF SECOND AMENDED COMPLAINT ............................................ 2

        A.      First Negotiation of JPMC Loan ............................................................................ 2

        B.      Emails Regarding Second Renegotiation.............................................................. 3

        C.      Ridenhour Proceeds with Second Renegotiation of JPMC Loan.................................... 4

        D.      Ms. Ridenhour Was Discharged Prior to Completion of Renegotiation ......................... 5

IV.     DEFENDANTS' MOTION TO DISMISS........................................................................... 6

V.      LEGAL ARGUMENT........................................................................................................ 7

        A.      Standard on Motion to Dismiss.......................................................................... 7

        B.      Ms. Ridenhour has Pled the Essential Elements of a Breach of Contract...................... 8

                1.      The SAC Sufficiently Pleads a Price Term ................................................. 8

                2.      Ms. Ridenhour Alleges Her Performance Was Rendered Impossible By
                        the Winery's Termination of her Employment............................................. 10

        C.      The SAC Identifies Writings Sufficient to Satisfy the Statute of Frauds ..................... 11

        D.      The Terms of the Agreement Were Sufficiently Definite............................................ 12

        E.      Ms. Ridenhour's Promissory Estoppel Claim is Viable................................................. 15

CONCLUSION.................................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Alaimo v. Mongelli*, 859 N.Y.S.2d 900 (Sup. Ct. Nassau County 2008)................................ 10, 11

*Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130 (2d Cir. 2005) ................................. 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 7

*Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union v. Hostess
   Brands, Inc. (In re Hostess Brands, Inc.)*, 499 B.R. 406, 414-15 (S.D.N.Y. 2013) ........... 10, 11

*Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36 (2d Cir. 1996) .......................... 8

*Basu v Alphabet Mgt. LLC*, 127 A.D.3d 450 (1st Dept. 2015)...................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 7

*Bellen v. Weiser*, 2007 U.S. Dist. LEXIS 75673 (S.D.N.Y. Oct. 11, 2007) ................................ 15

*Bernstein v 1995 Assoc.,* 185 A.D.2d 160 (1st Dept. 1992) ........................................... 13

*Buddman Distribs., Inc. v. Labatt Imps., Inc.,* 91 A.D.2d 838 (4th Dept. 1982)......................... 15

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203 (1989).............. 8, 12

*Cowen & Co., LLC v. Fiserv, Inc.*, 141 A.D.3d 18 (1st Dept. 2016)........................................... 13

*Crabtree v. Elizabeth Arden Sales Corp.*, 110 N.E.2d 551 (1953)............................................. 11

*Diversified Prods. V. Tops Mkts., Inc*, 2001 U.S. Dist. LEXIS 7642
   (W.D.N.Y. June 6, 2001) ...................................................................................... 9

*Foros Advisors LLC v. Digitalglobe, Inc.*, 333 F. Supp. 3d 354 (S.D.N.Y. 2018)................. 13, 14

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)........................................................ 7

*Great Lakes Cheese of N.Y., Inc. v. Agri-Mark, Inc.*, 2016 U.S. Dist. LEXIS 135120
   (N.D.N.Y. Sep. 30, 2016) ...................................................................................... 9

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8 (2d Cir. 1989) ................................. 11

*Interoil LNG Holdings, Inc. v Merrill Lynch PNG LNG Corp.*,
   60 A.D.3d 403 (1st Dept 2009)............................................................................. 13

*JSO Assocs. v. Price*, 2008 N.Y. Misc. LEXIS 2227 (Sup. Ct. Nassau County 2008) ................ 12

*K J Roberts & Co. Inc.*, 2014 US Dist. LEXIS 34740 (S.D.N.Y. Mar. 14, 2014) ................. 13, 14

*KJ Roberts & Co. v. MDC Partners, Inc.*, 605 F. App'x 6 (2d Cir. 2015) ............................ 13, 14

*Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447 (2d Cir. 1977) ......................................... 12

*Lidestri Foods, Inc. v. 7-Eleven, Inc.*, 2018 U.S. Dist. LEXIS 47377
   (W.D.N.Y. Mar. 21, 2018).................................................................................................. 15

*Lowenschuss v. Kane*, 520 F.2d 255 (2d Cir. 1975) .................................................................... 11

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ........................................... 7

*Naldi v Grunberg*, 80 A.D.3d 1 (1st Dept. 2010) ........................................................................ 11

*Nausch v. AON Corp.*, 2 A.D.3d 101 (1st Dept. 2003).................................................................. 11

*Philo Smith & Co., Inc. v. Uslife Corp.*, 554 F.2d 34 (2d Cir. 1977) ......................................... 15

*Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, 2010 U.S. Dist. LEXIS 27609
   (S.D.N.Y. Mar. 12, 2010) ................................................................................................ 9, 15

*Schuster v. Dragone Classic Motor Cars, Inc.,* 98 F. Supp. 2d 441 (S.D.N.Y. 2000) ................... 9

*Special Event Entm't v. Rockefeller Ctr., Inc.,* 458 F. Supp. 72 (S.D.N.Y. 1978)........................ 15

*Stevens v. Publicis, S.A.*, 50 A.D.3d 253 (1st Dept. 2008) .......................................................... 12

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)...................................................... 7

*United States v. Gen. Douglas MacArthur Senior Vill., Inc.,* 508 F.2d 377 (2d Cir. 1974) ......... 10

**Statutes**

General Obligations Law § 5-701............................................................................................. 2, 11

**Rules**

CPLR Rule 12(b)(6)................................................................................................................... 7, 13

## I.     PRELIMINARY STATEMENT

Plaintiff Lauren Ridenhour ("Ms. Ridenhour") respectfully submits this Memorandum of Law in Opposition to the Motion of defendants Bettina and Donald Bryant (the "Bryants") to Dismiss (the "Motion") the Second Amended Complaint (the "SAC").[1]  The Motion should be denied because the communications between the parties established Ms. Ridenhour's duties and payment terms, and Ms. Ridenhour performed her duties until she was discharged.

## II.     PROCEDURAL BACKGROUND

On March 22, 2019, Ms. Ridenhour filed her initial Complaint in this action. (the "Initial Complaint").  In the Initial Complaint, Ms. Ridenhour brought a claim against Ms. Bryant and the Donald L. Bryant Jr. Family Art Trust (the "Trust") for breach of an oral contract and recovery in quantum meruit relating to the renegotiation of a loan.  On April 22, 2019, Ms. Ridenhour filed her First Amended Complaint, alleging the oral contract was between Ms. Ridenhour and Mr. and Ms. Bryant, the borrowers on the loan, and similarly sought recovery in quantum meruit.

On June 3, 2019, and in accordance with Rule 2.A of this Court's Individual Practices (the "Court Rules"), the Bryants advised the Court and undersigned counsel that they intended to file a motion to dismiss the Amended Complaint.  With respect to Motions to Dismiss in this Court, Court Rule 2.D states:

---

[1]  Ms. Ridenhour also submits the Affirmation of George B. Schwab, which attaches her Second Amended Complaint and Exhibits.

**D. Special Rules for a Motion to Dismiss.**

During a pre-motion conference to discuss a motion to dismiss, *the non-moving party must advise the Court and its adversary whether it intends to file an amended pleading based on the pre-motion conference letter, and if so, when it will do so. If the party amends, the opposing party may then: (a) file an answer or*

(b) submit a letter stating that it still intends to file a motion to dismiss. No further requests for a pre-motion conference are necessary.

If the non-moving party elects not to amend its complaint and the motion to dismiss is granted, **it is unlikely that the Court will grant the non-moving party leave to amend.**

(Italics added; Bold in original).

On June 6, 2019, Ms. Ridenhour submitted her response to the Ms. Bryants' June 3rd letter.  Ms. Ridenhour stated she would amend the First Amended Complaint to allege that "a series of emails . . . satisfy the writings requirement of GOL § 5-701."   She further argued that the price term of the parties' agreement was sufficiently definite.  Finally, Ms. Ridenhour advised the Court that she intended to bring a claim for promissory estoppel. Id.  The Court has yet to schedule the pre-motion conference requested by Defendants' June 3rd Letter. After notifying the Court of her intent to file a Second Amended Complaint, Ms. Ridenhour filed her Second Amended Complaint on July 31, 2019.  Schwab Aff., Exhibit A.  Ms. Ridenhour should not be faulted for following Rule 2.D and doing what she was supposed to do.


### III.    ALLEGATIONS OF SECOND AMENDED COMPLAINT

**A.    First Negotiation of JPMC Loan**

Ms. Ridenhour is a financial consultant to family offices on banking relationships and related matters.  Since 2014, Ms. Ridenhour has been a consultant to private family offices.

(SAC ¶¶ 1, 9).  In May 2014, Ms. Bryant engaged Ms. Ridenhour for work related to the Bryant

Vineyards, Ltd.  ("Winery").  (SAC ¶10(a)).  In the summer of 2015, the Bryants separately

engaged Ms. Ridenhour as a consultant to renegotiate a $100 million loan with JP Morgan Chase

(the "JPMC loan") to Mr. Bryant secured by the Bryants' valuable art collection held by the

Donald L. Bryant Jr. Art Trust (the "Trust").  The Bryants and Ms. Ridenhour agreed that she

would receive a fee based upon any value added that she would negotiate in the loan's terms.

(SAC ¶¶ 11, 13).

After completing the renegotiation of the JPMC Loan, Ms. Ridenhour sent the Bryants a

spreadsheet detailing the reason for her request for $617,958 as compensation.  See Schwab Aff.,

SAC Exhibit A  The parties subsequently agreed that Ms. Ridenhour's fee would be $400,000.

(SAC ¶17).  Thus, in 2015 and 2016, the Winery paid Ms. Ridenhour a salary, and the Bryants

paid her separately $400,000 from their personal accounts for her work on the renegotiation of

the loan to the Bryants.  (SAC ¶19).

B.      **Emails Regarding Second Renegotiation**

On May 31, 2018,[2] Ms. Bryant and Ms. Ridenhour exchanged several emails between

Ms. Ridenhour's consulting email address and Ms. Bryant's personal email address while also

meeting in the Bryants' St. Helena home to discuss the loan negotiations.  (SAC ¶24).  See SAC

Exhibit B – Ms. Ridenhour inbox.  On May 31, before meeting, Ms. Bryant first emailed to Ms.

Ridenhour a summary of the status and written terms of the Bryants' loan.  (SAC ¶25).  See SAC

Exhibit C.  They agreed at the meeting that Ms. Ridenhour would be separately compensated for

her work on the loan as she previously had been compensated – based upon the value that she

would add to the new loan's terms. (SAC ¶26).  Because Ms. Bryant recognized on May 31 that

---

[2] Unless otherwise indicated, all dates which follow are 2018.

there would be a delay in Ms. Ridenhour's receiving compensation, Ms. Bryant wired $100,000 from her personal account to Ms. Ridenhour, and emailed a confirmation of that payment to Ms. Ridenhour's consulting email address.  See SAC Exhibit D – confirmation of wire transfer. (SAC ¶28).

After speaking with Ms. Ridenhour, Ms. Bryant later sent on May 31 email attaching a document entitled Art Loan Summary Document (titled on the document itself as "Art Loan Discussion").  The Art Loan Discussion is attached to the SAC as Exhibit E.  (SAC ¶29).  This document constituted Ms. Bryant's instructions to Ms. Ridenhour, to renegotiate the terms of the current loan, stating "we must renew this loan by or before spring 2019."  (SAC ¶30).

**C.       Ridenhour Proceeds with Second Renegotiation of JPMC Loan**

Ms. Ridenhour led the negotiations with JPMC for renewal of the loan to Mr. Bryant. This was a complex process including analysis of fluctuations of interest rates and projection of the London Inter Bank Overnight Rate, *i.e.*, LIBOR, with some of the most senior banking and credit executives at JPMC.  Moreover, Ms. Ridenhour was attempting to strike a deal while JPMC was changing its loan focus from asset-based collateral, *e.g.*, valuable art, to cash flow lending.  (SAC ¶38).  Ms. Ridenhour then conducted numerous meetings, calls and emails with different persons to accomplish her duties (SAC ¶52).

During the renegotiation, Ms. Ridenhour refused to submit to JPMorgan Chase a valuation of the Winery that was clearly inflated, and Personal Financial Statements for the Bryants that were inaccurate.  (SAC ¶¶ 41-53).  Ms. Ridenhour also became aware in October 2018 of material discrepancies in the Winery's reports to the Department of the Treasury, Alcohol and Tobacco Trade and Tax Bureau.  (the "TTB").  (SAC ¶¶54-62).  Ms. Ridenhour

reported both of these problems to Ms. Bryant who responded by becoming angry and

refusing to acknowledge the problem.  (SAC ¶¶ 43(b), 61).

**D.      Ms. Ridenhour Was Discharged Prior to Completion of Renegotiation**

On October 29, just a few days after Ms. Ridenhour informed Ms. Bryant and other board

members of the Winery of the TTB violations, Ms. Bryant emailed Ms. Ridenhour directing her

to cease discussions with all banks, including JPMC, until further notice.  (SAC ¶63).

On November 3, Ms. Bryant sent an email to Ms. Ridenhour stating, in relevant part:

> I truly appreciate the support and dedication you have shown Don and
> me the past several years …. It is just time for me to pursue different
> solutions ….
>
> You have a lot of talent and I know you will find satisfaction with the
> many other clients you have cultivated.  (SAC ¶64).

Other than the initial $100,000 payment on May 31, Ms. Bryant made no payment for

Ms. Ridenhour's services in connection with the loan negotiations for which Ms. Ridenhour had

done substantial work, similar to the work that she had done in connection with the prior loan for

which she had received a $400,000 fee.  (SAC ¶66).  It appears Ms. Bryant terminated Ms.

Ridenhour's services because Ms. Ridenhour (a) questioned the validity of Ms. Bryant's

financial representations to JPMC and refused to provide inaccurate financial information to

JPMC, (b) identified and complained about serious violations of TTB and local regulations.

(SAC ¶67).

The Second Amended Complaint dropped the Initial Complaint's claim for quantum

meruit and asserted claims against Defendants for breach of oral contract and promissory

estoppel. (SAC ¶¶ 68-77).  Otherwise, the allegations of the Second Amended Complaint

pertaining to Ms. Ridenhour's entitlement to a $400,000 fee substantially echoed the Initial

Complaint and the First Amended Complaint.  However, in the Second Amended Complaint, in

addition to alleging the existence of an oral contract between herself and Ms. Bryant (SAC ¶¶ 68-72), Ms. Ridenhour supplied the series of emails to which her June 6th letter alluded, which "together constituted the engagement of Ms. Ridenhour." (SAC ¶ 33).  Ms. Ridenhour attached these emails to her Second Amended Complaint as Exhibits B-E.  Schwab Aff., SAC, <u>Exhibit B</u>, <u>Exhibit C</u>, <u>Exhibit D,</u> and  <u>Exhibit E</u>.  The SAC also included, again, the payment terms of the previous renegotiation of the loan, <u>Exhibit A</u>.

These exhibits to the SAC are as follows:

Exhibit A. Calculation of fee on first renegotiation of JPMC loan.

Exhibit B. Screenshot of Ms. Ridenour's Inbox showing receipt of May 31, 2018 emails from Ms. Bryant.

Exhibit C. Existing JPMC Loan Terms emailed by Ms. Bryant to Ms. Ridenhour

Exhibit D. Confirmation of partial payment by Ms. Bryant

Exhibit E.  Instructions to renegotiate JPMC Loan – "Art Loan Discussion".

## IV.      <u>DEFENDANTS' MOTION TO DISMISS</u>

In the Motion, the Winery first argues, without citation to Court Rule 2.D, that Ms. Ridenhour failed to make a separate motion to amend.  (Mot. at 8).  The Winery then argues that the agreement alleged by Ms. Ridenhour is specious because it lacked a definite price term, despite the prior history of payment on a similar transaction.  (Mot. at 9-11).  The Winery also faults Ms. Ridenhour's inability to complete performance because she was discharged (Mot. at 11-12).  With respect to the SAC's inclusion of emails and a memorandum from Ms. Bryant to Ms. Ridenhour, the Winery argues that they fail to satisfy the Statute of Frauds or supply the necessary material terms.  (Mot. at 12-15).  Lastly, the Winery argues that Ms. Ridenhour's promissory estoppel claim is deficient because it lacks a clear and unambiguous promise and the

injury suffered by Ms. Ridenhour was not egregious.  (Mot. at 15-17).[3]  These arguments do not

preclude the Court from enforcing the agreement.


## V.     LEGAL ARGUMENT

### A.     Standard on Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the

complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's

favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court's

function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial

but merely to determine whether the complaint itself is legally sufficient.  "*Goldman v. Belden*,

754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff

has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  "*Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  When presented with a motion to dismiss

pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the

complaint, documents that the plaintiff relied on in bringing suit and that are either in the

plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial

notice may be taken. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

---

[3] The Motion argues at the very end that Ridenhour should not be given leave to replead. (Mot. At 17).  The Court's
Rule 2.D addresses repleading.

**B.** **Ms. Ridenhour has Pled the Essential Elements of a Breach of Contract**

   1.   The SAC Sufficiently Pleads a Price Term

In her amended complaint, Ms. Ridenhour alleges that she was engaged to perform the exact same task she had performed previously for the Bryants, a renegotiation of the JPMC loan, separately from her work for the Winery. (SAC ¶¶11-18). The parties agreed she would be paid in the same manner as in the first renegotiation – a portion of 20% of the savings obtained by Ms. Ridenhour. (See SAC ¶¶ 29-31 and SAC, Exhibit A.) Defendants argue that this compensation term is indefinite, precluding enforcement of the agreement, despite the parties' ability to determine the fee on the previous renegotiation.

The Second Circuit follows the New York Court of Appeals decision that an indefinite price term is not fatal if the contract or other circumstances provides some basis for determining the amount to be paid. *See Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483, 548 N.E.2d 203, 548 N.Y.S.2d 920 (1989). There the New York Court of Appeals explained:

> a price term is not necessarily indefinite because the agreement
> fails to specify a dollar figure, or leaves fixing the amount for
> the future, or contains no computational formula.  . . . . a price
> term may be sufficiently definite if the amount can be
> determined objectively without the need for new expressions
> by the parties; a method for reducing uncertainty to certainty
> might, for example, be found within the agreement or
> ascertained by reference to an extrinsic event, commercial
> practice or trade usage.

*Id.* at 483 (citations omitted). *See Arbitron, Inc. v. Tralyn Broad., Inc*., 400 F.3d 130, 132, 134-137 (2d Cir. 2005) (agreement to give Arbitron discretion in adjusting fees constituted a "mechanism for objectively setting material terms in the future without further negotiations between both parties."); *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36, 37-38,

40 (2d Cir. 1996) (unsigned memorandum that calculated plaintiff's compensation using undefined terms such as "pre tax revenues" and "full costs" was sufficiently definitive).  Here the compensation due Ms. Ridenhour was based on the concessions she obtained from the lender, the same method of computation the parties had successfully used for the previous renegotiation of the JPMC Loan.

The past practice of the parties regarding pricing for the same transaction provides a sufficient guidepost to determine a price or cost. *See Great Lakes Cheese of N.Y., Inc. v. Agri-Mark, Inc.*, 2016 U.S. Dist. LEXIS 135120, at \*29-30 (N.D.N.Y. Sep. 30, 2016) (despite the lack of a written contract, the essential terms of the arrangement between the parties <u>as reflected in their prior dealings</u> (i.e., the rate of payment, the time and location of performance, the manner of preforming, and expectations concerning insurance coverage) were clearly understood and agreed upon.") (emphasis added). *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, 2010 U.S. Dist. LEXIS 27609, at \*16-17 (S.D.N.Y. Mar. 12, 2010) (past payments to plaintiffs pursuant to agreement demonstrated that payment term was not indefinite); *Diversified Prods. V. Tops Mkts., Inc*, 2001 U.S. Dist. LEXIS 7642, at \*17-19 (W.D.N.Y. June 6, 2001) (contract not indefinite due to the failure to annex the referenced price schedules, where price schedule had been provided previously, and party had previously placed orders using same price schedule.).

Here, the calculation used previously, in which Ms. Ridenhour was paid a portion of 20% of the savings, to provide the same services, is sufficiently definite to enforce both her breach of contract and her promissory estoppel claims.   That the payment amount might vary according to Ms. Ridenhour's success does not make the term indefinite. *See also Schuster v. Dragone Classic Motor Cars, Inc.,* 98 F. Supp. 2d 441, 446-47 (S.D.N.Y. 2000) (where the amount to be paid would be ascertained later based on the condition and value of the cars that plaintiff had

selected, the price term was sufficiently definite).  The Bryants had no problem determining a fee

for the first JPMC Loan renegotiation.

        2.        Ms. Ridenhour Alleges Her Performance Was Rendered
                  Impossible by the Winery's Termination of her Employment

The Bryants' argument that Ms. Ridenhour cannot plead completion of the negotiations

she had been conducting for months is certainly disingenuous. (Mot. at 11-12).  The reason Ms.

Ridenhour could not complete the project was that the Bryants terminated her engagement,

rendering her further performance impossible. (SAC ¶¶).  "In general impossibility may be

equated with an inability to perform as promised due to intervening events, such as an act of state

or destruction of the subject matter of the contract.". *United States v. Gen. Douglas MacArthur*

*Senior Vill., Inc.,* 508 F.2d 377, 381 (2d Cir. 1974).  Moreover, the doctrine can also be applied

to excuse the performance of one party when the inability to perform is due to the actions of the

other party. *See Bakery, Confectionery, Tobacco Workers & Grain Millers Int'l Union v. Hostess*

*Brands, Inc. (In re Hostess Brands, Inc.)*, 499 B.R. 406, 414-15 (S.D.N.Y. 2013) (affirming

ruling that B&C union fund's termination of employer excused employer's subsequent breach

due to consequent inability to perform.); *Alaimo v. Mongelli*, 2008 NY Slip Op 50646(U), ¶ 4, 19

Misc. 3d 1111(A), 1111A, 859 N.Y.S.2d 900, 900 (Sup. Ct. Nassau County 2008).

In *Alaimo*, the plaintiff sued his former attorney for breach of contract and malpractice.

Alaimo had hired Mongelli to perfect an appeal, and Mongelli filed a notice of appeal.  However,

Alaimo terminated the engagement of Mongelli three months before the deadline to perfect the

appeal.  The appeal was never perfected and was dismissed.  The Court found that *Alaimo's*

discharge of Mongelli excused Mongelli's alleged non-performance, stating:

> Nevertheless, the existence of an attorney client relation or an
> enforceable contract to prosecute Alaimo's appeal is not relevant
> because he discharged Mongelli before the time to appeal expired.

10

> The "client has an absolute right, at any time, with or without cause,
> to terminate the attorney-client relationship by discharging the
> attorney" (citation omitted).  Thus performance of the alleged contract
> to appeal was prevented by plaintiff.  "It is basic contract law that one
> who prevents or makes impossible the performance of a contract
> cannot take advantage of its non-performance" (citation omitted).

*Id.*  Similarly, in this case, Ms. Ridenhour's failure to complete the negotiations is due entirely to

Ms. Bryant's decision to fire her.[4]  The Bryant's argument does not support dismissal of this

claim.

**C.      The SAC Identifies Writings Sufficient to Satisfy the Statute of Frauds**

The SAC identifies and attaches several writings exchanged describing the assignment.

General Obligations Law § 5-701 allows the writing requirement to be satisfied by a collection

of written communications establishing the agreement's existence.  *See Nausch v. AON Corp.*, 2

A.D.3d 101, 101-103, 769 N.Y.S.2d 481, 482-483 (1st Dept. 2003); *Horn & Hardart Co. v.*

*Pillsbury Co.*, 888 F.2d 8, 10-11 (2d Cir. 1989), *citing Crabtree v. Elizabeth Arden Sales*

*Corp.*, 305 N.Y. 48, 55, 110 N.E.2d 551, 554 (1953).  Ms. Bryant exchanged emails with Ms.

Ridenhour concerning renegotiation of the loan which collectively constitute a contract, and Ms.

Ridenhour plead the existence and content of these emails in the SAC.  Emails exchanged

between the parties satisfy the signed writings requirement of GOL 5-701.  *See* GOL § 5-

701(b)(3)(a)[5]; *Naldi v Grunberg*, 80 A.D.3d 1, 14, 908 N.Y.S.2d 639 (1st Dept. 2010).  Here the

---

[4] Furthermore, the issue of excuse due to impossibility is not appropriate for resolution on a motion to dismiss.  "Resolution of the defense of impossibility requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of such fault. In all but the clearest cases this will involve issues of fact." *Lowenschuss v. Kane*, 520 F.2d 255, 265-66 (2d Cir. 1975).  *See In re Hostess Brands, Inc.*, 499 B.R. at 415) (That the party caused impossibility was a finding of fact).
[5] GOL § 5-701(b)(3)(a) provides:
There is sufficient evidence that a contract has been made if:  (a) There is evidence of electronic communication (including, without limitation, the recording of a telephone call or the tangible written text produced by computer retrieval), admissible in evidence under the laws of this state, sufficient to indicate that in such communication a contract was made between the parties;  . . . ."

emails from Ms. Bryant and memorandum pled and attached to the SAC together are sufficient to establish an agreement.[6] *Stevens v. Publicis, S.A.*, 2008 NY Slip Op 2880, ¶ 3, 50 A.D.3d 253, 255-56, 854 N.Y.S.2d 690, 692 (First Dep't 2008) (The e-mails from plaintiff constitute "signed writings" within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the contents); *JSO Assocs. v. Price*, 2008 N.Y. Misc. LEXIS 2227, at *28-29 (Sup. Ct. Nassau County Mar. 18, 2008) ("where there is no question as to the source and authenticity of an email, the email is "signed" for purposes of the statute of frauds if defendant's name clearly appears in the email as the sender") (citation omitted).

**D.      The Terms of the Agreement Were Sufficiently Definite**

In addition to the price term, the other terms of the agreement between the Bryants and Ms. Ridenhour are sufficiently definite. Before finding that an agreement is too indefinite, "a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes it meaning clear." *Cobble Hill Nursing Home, Inc.*, 74 N.Y.2d at 483.  Methods for determining the meaning of such ambiguous terms can be found within the agreement itself or by comparison to "an extrinsic event, commercial practice, or trade usage." *Id*.  Courts are cautioned not to apply the doctrine with a "heavy hand" since "while there must be a manifestation of mutual assent to essential terms, parties also should be held to their promises . . ." *Id.*  "New York courts are in accord in hesitating to find that a contract is too indefinite for enforcement." *Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 453 (2d Cir. 1977) (Between industry standard and the reference to another transaction, there was extrinsic evidence to render the parties' obligations reasonably definite.)

---

[6] The Winery raises several factual objections to the exhibits to the SAC, which are not relevant on a motion to dismiss.  (Mot. at 5-6).

Where, as here, the duties of the parties are clear and there is some basis for determining the payment, a court will enforce the contract.  For example, in *Cowen & Co., LLC v. Fiserv, Inc.*, 141 A.D.3d 18, 31 N.Y.S.3d 494, 495 (1st Dep't 2016) the parties had agreed that the plaintiff would be engaged to act as "lead financial advisor" to the defendant in connection with a possible acquisition and the "Transaction Fee" would be "consistent with investment banking industry practice for transactions of comparable complexity, level of analysis and size". *Id.* at 495. The contract specifically defined the type of transaction (a proposed acquisition) and the type of financial advisor (lead financial advisor).  The First Department affirmed the denial of summary judgment for the defendant who claimed the agreement was unenforceable. finding that:

> The "Transaction Fee" provision explicitly references the type of commercial practice, or trade usage" New York courts routinely rely upon to render a price term sufficiently definite (*see e.g. Basu v Alphabet Mgt. LLC*, 127 AD3d 450, 450, 8 NYS3d 273 [1st Dept 2015] ["(t)he court correctly found that the claimed  oral agreements are not as a matter of law unenforceable for indefiniteness, since there may exist an objective method for supplying the missing terms needed to calculate the alleged compensation owed plaintiff"]; *Interoil LNG Holdings, Inc. v Merrill Lynch PNG LNG Corp.*, 60 AD3d 403, 404, 874 NYS2d 439 [1st Dept 2009] ["(w)hile the price term in th(e) agreement is not definite on its face, we find defendant has made a sufficient showing that the term can be supplied from public price indices and industry practice"]; *Bernstein v 1995 Assoc.,* 185 AD2d 160, 162, 586 NYS2d 115 [1st Dept 1992]

*Id.*

The Bryants' reliance on *KJ Roberts* and *Foros* is misplaced.  (Mot. at 13-15).  *See KJ Roberts & Co. Inc. v. MDC Partners Inc.*, 2014 U.S. Dist. LEXIS 34740, 2014 WL 1013828 (S.D.N.Y. Mar. 14, 2014), *aff'd*, 605 Fed. Appx. 6 (2d Cir. 2015); *Foros Advisors LLC v. Digitalglobe, Inc.*, 333 F. Supp. 3d 354, 361 (S.D.N.Y. 2018).  *KJ Roberts* was a decision on defendants' motion for summary judgment and did not apply a Rule 12(b)(6) standard.

Moreover, there the parties left open a material term for future negotiation—namely the "Adjustments" to be applied in order to calculate an incentive payment—and never agreed on an objective, extrinsic standard for determining the missing term. *KJ Roberts & Co. v. MDC Partners, Inc.*, 605 F. App'x 6, 7 (2d Cir. 2015).  Moreover, the parties' different positions resulted in vastly different payment calculations.  The adjustments applied by plaintiff resulted in a $1.2 million payment, while the adjustments applied by the defendant resulted in a payment of $0.  *K J Roberts & Co. Inc.*, 2014 US Dist. LEXIS 34740, at *9-10.  Unlike here, there the parties had no past transactions to rely upon and had starkly different views of the payment terms.

    *Foros* is also inapposite.  There, the alleged contract suffered from numerous major deficiencies not suffered by the agreement here.  It did not specify (a) the type of financial advisory role Foros would be offered (b) the scope of the expected advisory role, such as the expected work product or time commitment; or (c) specify the amount of money Foros would be paid for that work.  Unlike in this case, where Ms. Ridenhour's duties were clear, in *Foros* the court noted that "[t]here are plainly different types of financial advisors who provide different services for different levels of compensation on different types of strategic transactions." The court concluded "[w]ithout such critical terms as the type of financial advisor, the scope of services, and the compensation, there can be no binding agreement because the Offer Clause is merely an agreement to agree on these material terms at a later time." *Foros*, 333 F. Supp. 3d at 361.  Here, by contrast, there is no vagueness as to Ms. Ridenhour's duties, as she was providing the same services she had provided previously on the same loan, and the memorandum supplied by Ms. Bryant – the Art Loan Discussion - further set forth these duties.

14

**E.     Ms. Ridenhour's Promissory Estoppel Claim Is Viable**

Ms. Ridenhour alleges a cause of action for promissory estoppel as an alternative to the

breach of contract claim.  For this, she must plead: (a) a clear and unambiguous promise, (b)

reasonable and foreseeable reliance and (c) an injury to her caused by that reliance.  *See Bellen v.*

*Weiser*, 2007 U.S. Dist. LEXIS 75673, at *22-26 (S.D.N.Y. Oct. 11, 2007).

Where a party disputes the existence of a contract due to indefiniteness, a party may

prosecute both a breach of contract and promissory estoppel claim. *Piven*, 2010 U.S. Dist.

LEXIS 27609, at *25 ("[W]here Defendants dispute the existence of a valid, enforceable

contract, Plaintiffs are permitted to proceed on both contractual and quasi-contractual theories.");

*Lidestri Foods, Inc. v. 7-Eleven, Inc.*, 2018 U.S. Dist. LEXIS 47377, at *14 n.3 (W.D.N.Y. Mar.

21, 2018) ("LiDestri may continue its promissory estoppel claim because 7-Eleven disputes the

existence of a contract.").

Where the underlying contract is rendered unenforceable by the Statute of Frauds, a

plaintiff must prove an unconscionable injury to satisfy the third requirement.  *See Philo Smith &*

*Co., Inc. v. Uslife Corp.*, 554 F.2d 34, 36 (2d Cir. 1977).  At the pleading stage, Ms. Ridenhour

does not have a heavy burden to allege facts demonstrating unconscionability. *See Bellen*, 2007

U.S. Dist. LEXIS 75673, at *25-26.  "The burden of proof will, of course, weigh heavily on

plaintiff since the Statute of Frauds is not easily avoided. However, giving the complaint the

liberal construction to which it is entitled, [the Court should not] foreclose plaintiff's proof on the

questions raised therein." *Special Event Entm't v. Rockefeller Ctr., Inc.,* 458 F. Supp. 72, 77

(S.D.N.Y. 1978) (Duffy, J.) (citations omitted).  *See also Buddman Distribs., Inc. v. Labatt*

*Imps., Inc.,* 91 A.D.2d 838, 839, 458 N.Y.S.2d 395, 397 (4th Dep't 1982).  Therefore, Ms.

Ridenhour's claim for Promissory Estoppel should not be dismissed.

## **CONCLUSION**

For the reasons set forth above, Plaintiff Lauren Ridenhour respectfully requests that the

court deny the motion to dismiss by the Bryants.

Dated: New York, New York
       September 13, 2019


                               By:     /s/ George B. Schwab
                                       George B. Schwab

                                       Kraus & Zuchlewski LLP
                                       60 E. 42nd Street, Ste. 2534
                                       New York, New York 10165

                                       Attorneys for Plaintiff