USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/29/20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| LAUREN RIDENHOUR, | : | |
| | : | |
| Plaintiffs, | : | |
| -against- | : | 1:19-CV-2587 (ALC) |
| | : | **OPINION AND ORDER** |
| BETTINA SULSER BRYANT and DONALD L. BRYANT, JR., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Lauren Ridenhour brought this action against Defendants Bettina Sulser ("Mrs. Bryant") and Donald L. Bryant ("Mr. Bryant") for breach of contract and promissory estoppel. The dispute stems from Defendants' refusal to pay Plaintiff, their former employee, for her time renegotiating a loan on their behalf in accordance with an alleged oral agreement between the parties. Defendants now move to dismiss Ridenhour's Second Amended Complaint pursuant to Fed. R. Civ. P. 15 for failure to seek leave of court prior to amending her complaint, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. They argue that Plaintiff failed to allege facts that would support the requisite elements of breach of contract and promissory estoppel, and that both claims warrant dismissal under the New York Statute of Frauds. For the reasons that follow, Defendants' motion is GRANTED.

1

# BACKGROUND

## I. Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC"), and I accept these facts as true for the purposes of this motion.

Defendants hired Plaintiff to serve as a financial consultant for their Winery, Bryant Vineyards, Ltd. in 2014. (SAC at ¶10(a)); ECF 18 at 4). Eventually, Plaintiff became a full-time employee of the Winery, earning a base salary of $150,00 plus commissions for sales generated from new relationships she cultivated. (SAC at ¶10(a)).

During the summer of 2015, Defendants asked Plaintiff to negotiate a $100 million-dollar loan from JP Morgan Chase secured by their art collection. (*Id.* at ¶11). The collection was held by a Trust managed by three trustees, Mrs. Bryant, Becky Hubert, and Thomas R. Corbett (collectively, "Trustees"). (*Id.* at ¶¶ 11–12). Defendants and Plaintiff agreed orally that Plaintiff would be compensated separately for her work on this transaction, which was for Defendants personally as opposed to the Vineyard. There was no written agreement, but the parties agreed orally that Plaintiff would receive a fee "based upon any value added that she would negotiate in the loan's terms." (*Id.* at ¶¶ 13–14). The negotiations began in 2015 and lasted into 2016. (*Id.* at ¶¶ 19–20). At the end of negotiations, Plaintiff requested $617,958 as compensation. (*Id.* at ¶ 17, See *Id.* at Exhibit A). The parties, however, ultimately agreed that Plaintiff's fee would be $400,000. (*Id.* at ¶ 17). The SAC does not explain how this number was reached.

The 2016 loan was set to expire in "Spring 2019." (*See id.* at Ex. E). On May 31, 2018, Mrs. Bryant and Plaintiff exchanged several emails concerning the renegotiation of the loan. They also met in person. (*Id.* at ¶ 24). On the 31st, before the two met, Mrs. Bryant emailed Plaintiff a summary of the status and written terms of the Bryants' 2016 loan. (*Id.* at ¶ 25 and Exhibit C).

At the meeting, they agreed that Plaintiff would be compensated for renegotiating the loan separately, in the same manner as before. (*Id.* at ¶ 26). Mrs. Bryant told Plaintiff that there would be a delay in Plaintiff receiving compensation, so that day, she wired Plaintiff $100,000 from her personal account and emailed confirmation of the payment to Plaintiff's professional, consulting email. (*Id.* at ¶ 28, Exhibit D). On that same day, Mrs. Bryant also emailed Plaintiff a document entitled "Art Loan discussion," which Plaintiff asserts "constituted Mrs. Bryant's instructions to [her], to renegotiate the terms of the current loan, stating 'we must renew this loan by or before spring 2019.'" (*Id.* at ¶ 30 (quoting *id.* at Exhibit E)).

On June 1, 2018, Plaintiff participated in a conference with the Trustees, including Mrs. Bryant, all of whom again directed her to contact JP Morgan Chase to begin discussing the terms of the loan renewal. They further instructed her to explore other bank options and terms. (*Id.* at ¶ 32).

Again, there was no written agreement between the parties, but Plaintiff argues that the May 31 emails together constituted the engagement of Plaintiff's services. (*Id.* at ¶ 33). Plaintiff proceeded with the loan renewal process which demanded substantially more of her time than had the 2016 loan negotiations. (*Id.* at ¶¶ 35–41).

During negotiations, Plaintiff reviewed Defendants' draft personal financial statement that they intended to submit to JP Morgan Chase. Plaintiff questioned the accuracy of several portions of the statement, including "income streams from Mr. Bryant's insurance company and other income sources," as well as the Winery's valuation at $125 million. (*Id.* at ¶ 41(a)). On an October 26, 2018 conference call with the Defendants and the International Wine Associates ("IWA"), which represents Defendants' Trust, an IWA representative projected a final valuation of the Winery that was significantly lower than $100 million. (*Id.* at ¶ 43(a)). This projection

angered Mrs. Bryant, who believed it was incorrect. (*Id.* at 43(b)). Upon Plaintiff's information and belief, Mrs. Bryant later insisted that the IWA adjust its projections. (*Id.* at ¶ 43(c)).

On June 29, Mrs. Bryant's assistant emailed Plaintiff and others a draft personal financial statement representing the Winery's valuation to be $125 million. (*Id.* at ¶ 46). Plaintiff expressed her concerns regarding the valuation to a trustee. She also met with the Trustees, the Winery's Board Chair, the Winery's counsel, a Winery Board member, and one trustee's attorney. At that meeting, Plaintiff expressed her concerns about the various inaccuracies on Defendants' personal financial statement. (*Id.* at ¶ 47–48).

Despite her concerns, Plaintiff continued to work to secure the loan renewal. (*Id.* at ¶ 51). However, Plaintiff subsequently discovered other issues with the operation of the Winery. In particular, she learned that the Winery had been misreporting data to the Alcohol and Tobacco Trade and Tax Bureau in violation of wine labeling regulation 27 C.F.R. § 4.27. (*Id.* at ¶¶ 54–60). Plaintiff informed Mrs. Bryant about the inaccuracies. Mrs. Bryant first denied knowledge of the errors and later reversed herself, telling Plaintiff that these violations were widespread and rarely discovered by the government. (*Id.* at ¶ 61).

On October 29, shortly after Plaintiff informed Mrs. Bryant about these additional errors, Mrs. Bryant emailed Plaintiff, instructing her to cease discussions with all banks until further notice. (*Id.* at ¶ 63). On November 3, Mrs. Bryant again emailed Plaintiff, firing her. (*Id.* at ¶ 64). The Winery paid Plaintiff salary and benefits for her work through the end of 2018, however, the Defendants never compensated her for her services in connection with the loan renewal negotiations. (*Id.* at ¶¶ 65–66). Plaintiff believes she was fired because she questioned the validity of the Defendants' personal financial statement and complained about the Winery's violation of labeling regulations. (*Id.* at ¶ 67).

## II. Procedural Background

On March 22, 2019, Plaintiff filed her initial Complaint in this action. (ECF No. 1). She sought $400,000 as the "fee for her services" rendered in connection with "renegotiating a $98,459,169 million loan with JP Morgan Chase" that would mature in April 2019. (*Id.* at ¶¶ 1–2.) In her initial complaint, Plaintiff sued Mrs. Bryant and the Donald L. Bryant Jr. Family Art Trust for breach of an oral contract, and also sought recovery in quantum meruit. (*Id.* at ¶¶ 45–53).

On April 22, 2019, Plaintiff filed her First Amended Complaint ("FAC") as a matter of right. (ECF No. 5). The primary change was that the FAC alleged that the oral contract was between Plaintiff and Mrs., *and* Mr. Bryant. (*Id.* at ¶¶ 48–58). The FAC also dropped all allegations against the Trust.

On June 3, 2019, and in accordance with Rule 2.A of my Individual Practices, Defendants requested a pre-motion conference in anticipation of their motion to dismiss. (ECF No. 14). Plaintiff responded in opposition to Defendants' letter motion. (ECF No. 15). In her opposition, Plaintiff stated that she planned to "amend the complaint," however, she did not seek leave of the Court or Defendants' consent to do so. (*Id.* at 1). Before I ruled on Defendants' request, Plaintiff submitted her Second Amended Complaint ("SAC"), which substituted her claim for recovery in quantum meruit with a claim for promissory estoppel. Two weeks later, Defendants filed their motion to dismiss the SAC. (ECF No 17).

## DISCUSSION

### I. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists where a claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In "[d]etermining whether a complaint states a plausible claim…[t]he court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Gillespie v. St. Regis Residence Club, New York Inc.*, No. 16-cv-9390, 2019 WL 4747185, at *4 (S.D.N.Y. Sept. 30, 2019) (citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Because Defendants have raised an affirmative defense under the Statute of Frauds, I will also note that "consideration of the affirmative defense of the Statute of Frauds is appropriate on a motion to dismiss." *Rosbach v. Industry Trading Co., Inc.*, 81 F. Supp. 2d 522 (S.D.N.Y. Feb. 4, 2000).

## II. The Second Amended Complaint

As a preliminary matter, Defendants argue that Plaintiff's SAC should be dismissed solely because she failed to obtain leave to amend. For the following reasons, I reject Defendants' argument and consider the viability of Plaintiff's SAC under the framework of 12(b)(6) motions to dismiss.

Motions to amend are governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides that parties "may amend [their] pleading[s] once as a matter of course[,] Fed. R. Civ. P.

15(a)(1), but "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further instructs courts to "freely give leave [to amend] when justice so requires." *Id.* "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Wang v. King*, No. 19 Civ. 8948, 2020 WL 417690, at *3 (S.D.N.Y. Jan. 27, 2020) (slip op.) (internal quotation marks omitted) (alteration in original). "When a claim is dismissed because of pleading deficiencies, the usual remedy is to permit a plaintiff to amend [her] complaint." *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 254 (S.D.N.Y. 2004).

Nonetheless, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet. Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Although in this instance, Plaintiff did violate Rule 15 and Plaintiff's amendment was futile, as I conclude that dismissal of her SAC is warranted pursuant to 12(b)(6), in the interests of fairness and judicial economy, I will exercise my discretion and construe Plaintiff's filing as a request for leave to amend, which I grant *sua sponte*.

### III. Breach of Contract

Defendants argue that Plaintiff's breach of contract claim should be dismissed because (1) the oral agreement she alleges is void under the New York Statute of Frauds; and (2) she fails to allege essential elements of a breach of contract claim. (ECF No. 18 at 14–18).

Because Defendants are right on both accounts, Defendants' motion to dismiss Plaintiff's breach of contract claim is granted.

7

## A. Material Contract Elements

To establish a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) adequate performance of the contract by plaintiff; (3) defendant's breach of the contract; and (4) damages. *See Red Fort Capital, Inc. v. Guardhouse Productions, LLC*, 397 F. Supp. 3d. 456, 477–78 (S.D.N.Y. 13, 2019). Defendants argue that dismissal of Plaintiff's breach of contract claim is warranted based on the first and second prongs. Because I agree with Defendants that Plaintiff failed to plead the existence of an enforceable contract, and this failure is fatal to Plaintiff's claim, I need not reach the question of whether Plaintiff also failed to plead her own adequate performance.

First, Defendants argue that Plaintiff has not alleged the existence of an enforceable contract because the alleged agreement between the parties is not sufficiently definite. "Few principles are better settled in the law of contracts than the requirement of definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 506 (S.D.N.Y. 2001). "Price or compensation are material terms in a contract requiring definiteness." *Major League Baseball Props., Inc. v. Opening Day Prod., Inc.*, 385 F. Supp.2d 256, 271 (S.D.N.Y. 2005).

As Defendants correctly observe, the oral agreement Plaintiff relies on lacks a definite price term. She alleges that the parties agreed that her compensation would be "based upon the value that she would add to the new loan's terms." (SAC at ¶ 26). "The failure to fix a sum certain, however, is not necessarily fatal to a contract." *GEM Advisors, Inc. v. Corporacion Sidenor*, S.A., 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009). As this Court has noted, the New York Court of Appeals has held:

> Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the

need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage. A price so arrived at would have been the end product of agreement between the parties themselves.

*Gutowski v. Steinbrenner*, 680 F. Supp.2d 602, 610 (S.D.N.Y. 2010) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (1989) (internal citations and quotation marks omitted)).

In her opposition to Defendants' Motion to Dismiss, Plaintiff argues that the compensation agreed to by the parties for her loan renegotiation services is ascertainable based on the pricing the parties agreed to regarding Plaintiff's work on the initial JP Morgan Chase loan. (ECF No. 24 at 12–14). Plaintiff contends "the calculation used previously, in which [she] was paid a portion of 20% of the savings" she obtained for Defendants on their initial loan agreement, "to provide the same services, is sufficiently definite to enforce…her breach of contract …claim." (*Id.* at 13). This explanation of how her fee was calculated is distinct from what Plaintiff pled in her Complaint. There, she alleges that she had been paid a fee that was "based on the value that she would add to the new loan's terms." (SAC at ¶ 26).

Under either "formula," Plaintiff's claim does not survive. It is impossible to know how "value added" or "a portion of 20%" was calculated or what the parties agreed those terms meant. In fact, as Plaintiff pled in her complaint, she initially billed Defendants $617,958 for her work on the 2016 loan negotiations, but only ever received $400,000. (SAC at ¶ 17). Plaintiff alleged that $617,958 was 20% of the reduction in overall loan costs or savings. (*Id.* at Exhibit A). However, as Plaintiff concedes, she was not paid that 20%, the amount of "value added," and was instead paid only 12.95% of savings as compensation for her work in 2016. (*Id.*). Plaintiff provides no explanation as to how that $400,000 value was reached. Based on these facts, the

9

2016 loan negotiations' compensation rate does not provide a guidepost for properly interpreting the terms "value added" or "a portion of."

"Value added" and "portion" are the types of vague compensation terms that New York courts have routinely determined to be too indefinite. *See e.g. Khurana v. Wahed Invest, LLC*, No. 18-cv-233, 2019 WL 1430433, at *9 (S.D.N.Y. Feb. 26, 2019) (plaintiff, former employee of defendant company alleged that defendant breached oral agreement to pay him an equity stake in company that would be the number of shares equal to $2.4 million based on the Company's then current valuation of $120,000,000, and court determined that this described compensation was too indefinite because plaintiff "failed to allege the nature of the 'equity' he was to receive" or how and how often the company's value and his stake were to be measured); *Glanzer v. Keilin & Bloom LLC*, 722 N.Y.S. 2d 540, 541 (1st Dep't Mar. 29, 2001) ("terms used to describe plaintiffs' rights under the alleged contract—'substantial income', 'market rate', 'equity interest'—being too indefinite to permit enforcement"); *Freedman v. Pearlman*, 706 N.Y.S. 2d 405, 408 (App. Div. 2000) (concluding that alleged promise of "fair compensation" and "to equitably divide the draw" are too indefinite to be enforceable); *see generally Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578, 2010 WL 1257326, at *5 (S.D.N.Y. Mar. 12, 2010) ("courts applying New York law have found agreements unenforceably vague where they amount to a 'mere agreement to agree, in which a material term is left for future negotiations.'" (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543–44 (N.Y. 1981)).

Plaintiff has not pled facts that would allow me to use her compensation for the 2016 loan negotiations as a vehicle for objectively determining the price term for the 2019 loan negotiation agreement. Plaintiff cites a series of cases in her opposition for the proposition that the parties'

past transaction for identical services rendered does, in fact, provide a sufficient metric. (*See* ECF 24 at 13 (quoting *Great Lakes Cheese of N.Y., Inc. v. Agrimark, Inc.*, 7:14-CV-0232, 2016 WL 5717337 (N.D.N.Y. Sept. 30, 2016); *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08 Civ. 10578, 2010 WL 1257326 (S.D.N.Y. Mar. 12, 2010); *Diversified Prods., Inc. v. Top Mts., Inc.*, No. 99-CV-0457EF., 2001 WL 640697 (W.D.N.Y. June 7, 2001). In these cases, New York courts found that despite the absence of a written contract, the essential terms of the parties' agreement were sufficiently definite because the parties had adhered to them in prior transactions.

Plaintiff's cases, however, are inapposite. In all these cases, the parties had conducted more than one previous transaction pursuant to the terms of the relevant agreement, which provided those courts with a clear methodology for determining uncertain material terms such as price. *See, e.g. Great Lakes Cheese of N.Y.*, 2016 WL 5717337, at *7, *9 (parties had 20-plus year business relationship and "record reflect[ed] that the parties determined a price term by regular reference to a specific source during the course of their dealings…"); *Piven,* 2010 WL 1257326, at *6 (parties conducted "dozens" of prior transactions pursuant to the terms of the agreement at issue, including the amount of Plaintiff's fee); *Diversified Prods.*, 2001 WL 640697, at *4 (parties' failure here to annex agreed-upon price schedules to the final contract did not render contract at issue unenforceably indefinite because defendant had purchased goods "in conformance with such price schedule for approximately a year without any confusion or ambiguity"). Plaintiff, by contrast, seeks to rely on only one previous transaction, and does not even provide the Court with a clear explanation as to how price was calculated in that one prior instance. "[W]here missing or vague terms cannot be substituted by reference to an objective standard, the alleged agreement 'leave[s] no room for legal construction or resolution of

ambiguity' and therefore is unenforceable." *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. 2018) (quoting *Schmacher*, 417 N.E.2d at 544) (alteration in original); *see also Khurana*, 2019 WL 1430433, at *9 ("A compensation term is insufficiently definite if it cannot be objectively determined without the need for new expressions by the parties" (internal quotation marks omitted)).

Because the agreement Plaintiff alleged is indefinite as to compensation (price), a material term, and the meaning of that term cannot be objectively interpreted by referencing Plaintiff's compensation for the 2016 loan negotiations, Plaintiff's claim for breach of contract must be dismissed.

### B. Statute of Frauds

Even if Plaintiff had pled the required elements of her breach of contract claim, dismissal would still be appropriate under the New York Statute of Frauds. New York General Obligations Law ("GOL") Section 5-701(a)(10) provides in relevant part:

> (a) Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking....
>
> (10) Is a contract to pay compensation for services rendered in negotiating a loan…This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.

GOL § 5-701(a)(10). Embodied in this provision is the New York Statute of Frauds. *See Hanson v. Hanson*, No. 18 civ. 695, 2019 WL 935127, at *3 (S.D.N.Y. Feb. 26, 2019).

Plaintiff's claim falls precisely within the language of § 5-701(a)(10). Her SAC alleges that "Defendants have failed and refused to compensate her for services rendered in connection with

12

renegotiating the terms of a $98,459,169 loan[.]" (SAC at ¶1). The contract, she admits, was an oral agreement that was never cemented in writing.

Plaintiff does not dispute that G.O.L § 5-701(a)(10) is applicable here, but she argues that Defendants cannot use it as a functional defense because the emails she submitted between herself and Mrs. Bryant, taken together, are writings sufficient to satisfy the Statute of Frauds. (ECF No. 24 at 15).

"While a series of writings 'may be read together to satisfy the Statute of Frauds provided that they clearly refer to the same subject matter or transaction,' the combination of writings still must 'contain substantially the whole agreement and all its material terms and conditions." *KJ Roberts & Co., Inc. v. MDC Partners, Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *7 (S.D.N.Y. Mar. 14, 2014) (quoting *Kobre v. Instrument Sys. Corp.*, 387 N.Y.S.2d 617, 618–19 (1st Dep't 1976)). *See Alkholi v. Macklowe*, 17 Civ. 16, 2017 WL 6804076, (S.D.N.Y. Dec. 22, 2017) (quoting *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575–76 (N.Y. 1969) (It is a "well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement, including the rate of compensation if there has been agreement on that matter").

The "writings" Plaintiff relies on consist of three attachments to her SAC, Exhibit C, Exhibit E, and Exhibit B. Exhibit C is a spreadsheet that purports to list details of the personal and business loans of Defendants. Among the personal loans is the 2019 JP Morgan Chase loan. But nowhere on this document does it contain Plaintiff's name, let alone indicate that she was directed to renegotiate this loan or how much she was paid for this service. In her complaint, Plaintiff characterizes Exhibit E as "instructions" Mrs. Bryant sent her to renegotiate the terms of

13

the loan. (SAC at ¶ 30). The document is two pages, entitled "Art Loan Discussion," and dated May 31, 2018. It lists the current loan as $98,459,169. There is a section describing the current "interest rate environment" that concludes: "We must renew this loan by or before Spring 2019." There is also a section covering "important factors to consider" such as Mr. Bryant's "health, the size of the loan, liquidity, income stream, and quality and concentration of art." In this section, the document notes that "[t]he loan may be placed with one bank or split between two." Finally, the document does reference Plaintiff at the end in an "additional note." It provides:

> Lauren and I also analyzed the St. Helena house mortgage amidst this increasing interest rate environment. It currently has a floating rate that will adjust up August 1, 2019, at which point the monthly mortgage payment will double. If we wait to make a change next year we will likely lose the opportunity to lock in a lower rate. We think it prudent to secure a 30-year locked-in interest rate as soon as possible, thus mitigating interest rate risk on that loan.

The document reads like meeting notes, and although it suggests that Plaintiff had conversations with Mrs. Bryant about the loan renegotiations, there is no indication of an agreement between the parties that Plaintiff would act. In fact, it is not even clear from the language of the document that Plaintiff was the only recipient. In addition to lacking any indication of an agreement among an identifiable set of parties, this document provides no guidance on price, which, as discussed above, is a material term to a contract. Plaintiff's allegation as to the price term agreed to by the parties orally is so indefinite that it renders the contract unenforceable. But even if that term had been clear, its omission from the writings submitted would still be fatal to Plaintiff's breach of contract claim under the Statute of Frauds. *See KJ Roberts & Co. Inc.*, 2014 WL 1013828, at *7 (quoting *Kobr*e, 387 N.Y.S. 2d at 619) ("Even assuming that the writings viewed together constitute a memorandum which demonstrates the existence of a material term orally agreed upon, but which was not recited, such omission is fatal to the contention that the writings satisfy the Statute of Frauds").

14

Exhibit B does not help matters. It is a screenshot of Plaintiff's email inbox, which indicates that Mrs. Bryant did wire her money and did send her the document contained in Exhibit E. As explained above, Exhibit E is not helpful to plaintiff's claim. As for the fact that Mrs. Bryant wired Plaintiff money, that is insufficient to establish a definite price term, let alone agreement. The wire transfer was for $100,000, substantially less than the amount Plaintiff claims she is due for her 2019 loan renegotiation services.

### III. Promissory Estoppel

"Under New York law, promissory estoppel has three elements: [i] a clear and unambiguous promise; [ii] a reasonable and foreseeable reliance by the party to whom the promise is made[;] and [iii] an injury sustained by the party asserting the estoppel by reason of the reliance." *Komlossy v. Faruqi*, LLP, No. 15 Civ. 9316, 2017 WL 722033, at *8 (S.D.N.Y. Feb. 23, 2017) (internal quotation marks omitted) (alteration in original). Defendants argue that Plaintiff's promissory estoppel claim should be dismissed because her complaint does not allege the first required element, "a clear and unambiguous promise." (ECF No. 18 at 20). I agree.

The alleged promise Plaintiff relies on is indefinite. She alleges that she was instructed to renegotiate the JP Morgan Chase loan and promised that she "would be separately compensated for her work on the loan as she previously had been compensated—based upon the value that she would add to the loan's new terms" or alternatively, "a portion of 20% of the savings" obtained via her renegotiation efforts. (*See* SAC at ¶26; ECF 24). As discussed, these price terms are uncertain and unintelligible from the details of the 2016 loan renegotiations. Additionally, because the only alleged factual basis for Plaintiff's promissory estoppel claim is the agreement between herself and Defendants, this claim is duplicative of her breach of contract claim. *KJ Roberts*, 2014 WL 1013828, at *11 ("In the absence of a duty independent of the [alleged]

15

agreement, [a] promissory estoppel claim [is] duplicative of [a] breach of contract claim") (alterations in original) (quoting *Celle v. Barclays Bank P.L.C.* 851 N.Y.S. 2d 500, 501 (1st Dept. 2008)).

Plaintiff's promissory estoppel claim also fails because the Statute of Frauds applies to the alleged agreement. "To invoke the doctrine of promissory estoppel to circumvent the Statute of Frauds, a 'plaintiff must demonstrate unconscionable injury, i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement.'" *Bd. of Managers of Trump Tower at City Ctr. Condominium by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 469 (S.D.N.Y. 2018) (quoting *Merex A.G. v. Fairchild Weston Sys., Inc.,* 29 F.3d 821, 826 (2d Cir. 1994) (internal quotation marks omitted)).

Plaintiff alleges no injuries beyond lost monetary compensation, which does not qualify as unconscionable under New York law. *See Komlossy*, 2017 WL 22033, at * 8. "[O]ther than in the most exceptional cases, courts have consistently held that lost fees…constitute insufficient injury to invoke the doctrine of promissory estoppel as a bar to the assertion of a Statute of Frauds defense." *KJ Roberts*, 2014 WL 1013828, at *11 (quoting *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 325 (S.D.N.Y. 2009) (applying New York law) (alteration in original)).

Accordingly, Defendant's motion to dismiss with respect to promissory estoppel is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's SAC is GRANTED in its entirety. The Clerk of the Court is asked to terminate all pending motions and close this case.

**SO ORDERED.**

**Dated:** March 29, 2020

      **New York, New York**

                                        **ANDREW L. CARTER, JR.**

                                        **United States District Judge**